Our next case is Nautilus Insurance v. 200Christian Stret Partners, numbers 19-1506 and 19-1507. And we'll hear from the appellants when they're ready to go. May it please the Court. Your Honor, I'd like to do three things in addition to answer whatever questions you have. First, I'd like to explain why this Court does have appellate jurisdiction to hear this dispute. And then second and third, I'd like to address the two fundamental errors in the District Court's ruling, which is the decision first to not follow Kverner, Gambone, Pottstown, Sapa specialty surfaces and the numerous cases that we've cited from this Court and the State Courts that have held that where there's faulty workmanship that damages only the work product of the contractor, the home as a whole, there is not an allegation of property damage caused by an occurrence. And then third, I'd like to address the District Court's erroneous ruling that there was potentially a claim for covered bodily injury damages. Now, we're always happy to hear about our jurisdiction. I don't know if you're aware that the appellees filed a motion apparently yesterday to dismiss for lack of jurisdiction. I don't know if you received that or read it. I saw it yesterday afternoon and I've read it. Well, I think we're not going to deal with that now. Candidly, I haven't read it and you haven't gotten a chance to respond to it. So if we maybe could leave that aside for purposes of this argument, that would be great. You'll have a chance to respond to it. That's what I was going to ask, that we would respond in the normal 10 days and submit our written response. Yes, that would be great. I would like to just highlight, though, that what was filed speaks only to one of the two consolidated actions, the Clare actions. So to the extent that we're also discussing the Milo action, what they filed has absolutely nothing to do with that case because there's been no amended pleading in the Milo case. All of the parties that were named in the Milo case that need to be here are here. So while I do want to address your motion later, I don't believe it in any way impacts this appeal and certainly not the Milo. All right. So how about what we have before us? Okay. As to what we have before you, one of the issues that's been raised is that the court may not have jurisdiction about this case. We obviously disagree and have addressed it at length in our brief. The appellees cite the case Levalor, which they claim precludes this court from deciding this issue, arguing that there is not yet a final order and that there are issues that remain in the case. We've cited, in contrast, the Unitrim case, which is on all fours with this. It was non-precedential. It is, but the fact pattern is the same as what we have here. I was on the panel. We never discussed it. There's nothing in that opinion that says anything about it. You just said we have jurisdiction in a footnote. There's just a footnote that says there is jurisdiction. But even without that, what we have here is different than Levalor in that we have an order that not just denied the carrier's motion for the judgment on pleadings as to one of the counts in the carrier's complaint, which dealt with the occurrence issue. We have an order where the court added the extra sentence, which was not even in the proposed form of order of the defendants,  so the court decided all of those issues, ignoring the arguments that we had in the subsequent counts in the complaint that dealt with things like several of our policy exclusions, and, in effect, has issued an injunction requiring us to defend the case. And this court had mentioned in the earlier argument that you don't want to deny parties meaningful appellate review. Here we have an order, and what appellees have suggested is that we just ignore that order, ignore the verbiage that says we don't have a duty to defend, and they suggest that if we ignored that, we couldn't be subject to contempt of court. I respectfully disagree. The order is crystal clear that we have, in the present tense, a duty to defend. The other import of that order is that it's an injunction precluding us from withdrawing from the defense, like we wanted to do in this case by providing a defense, filing a D.J., and seeking a determination that we have no obligation to continue to defend. Additionally, if we were to violate that order — You're currently defending, correct? Excuse me, Your Honor? You're currently defending. Yes, when we filed the declaratory judgment action, the carrier was defending the case, didn't believe it had an obligation to do so, but out of an abundance of caution, defended under a reservation of rights, and then filed the two declaratory judgment actions. And as of today, you're still defending? Yes, we are, Your Honor. Okay. And in both cases, even though the one case has the amended complaint. So why don't we move to the merits then? I mean, you know, the standards set forth by other courts, State and us as well, I mean, it's a pretty high hill. I mean, the possibility that the insurer owes an insurance defense, I mean, it's a little bit of a hill for you to climb, right? It is, but it's one that carriers and courts climb every day. I mean, there are numerous decisions that say carriers have no duty to defend. And courts have looked past things like addamnum clauses that say such other and further relief as may be requested. They look at the facts that are alleged. But that's a little more specific in this case, isn't it? It's not, Your Honor, because for the property damage claims, the only damages that are alleged are damages to the two luxury homes. There's no allegations that control. I'm a little controlled by Indilex here. Excuse me, Your Honor? Doesn't Indilex really are North Star, as it were, here? No, no. The North Star here is Covernor, which is the Pennsylvania Supreme Court decision, and especially surfaces, which is this court's decision, discussing Covernor, Gambon, and other cases in Pennsylvania. You've had more recent case law in Pottstown, which is the same court that decided Indilex, the Pennsylvania Superior Court. And what those courts have done repeatedly is look at what are the allegations, what are the facts. And one thing that all the cases other than Indilex involve are home builders, where the product, the work of the builder and of the insured, is to build the entire house. As your introduction said, you said faulty workmanship is not, you know, an occurrence if it's damage to the own property, to the work. But the allegations here go beyond that. The allegations here involve faulty materials causing damage to the home, right? There's not a Pennsylvania case that holds directly on the point. You've got some dictum, but there's not actually a holding either way that I can see on either side involving damage caused by faulty property. You don't disagree that that's pleaded here. There are some allegations here about some defective windows and doors and air conditioning and other stuff. I disagree to a certain extent. You disagree that it's pleaded. As to some of that, yes. When you talk about the air conditioner, you're talking about a problem with the air conditioner, but they're not alleging any property damage resulting from that. But you're not disagreeing that windows and doors causing damage is pled here. In Milo, they complain about one window. And when you look at the allegations, which also, by the way, include, because it's attached to the pleading, the forensic report, the investigative report that was done by the investigators, and both of the underlying complaints, they attach the expert reports. So that's different than Converner, where the court said you cannot look at the expert reports because they were produced in discovery. Here, the expert reports are part of the pleadings. And when you look at those expert reports, what they find problems with are the installation of different things, problems with the sash. And when you look at the complaint, they talk about a window in a couple places, but they also talk about how it was replaced. But the problem was the sash was never replaced, the installation itself. So you're complaining about that allegation. Are you saying there is no allegation in here that is about the failure of the window or door itself in either suit? To the extent that there's a failure that it allowed water to intrude, that's clearly what they're alleging in certain instances. Are they alleging that there was an active malfunction? I don't see that anywhere in this pleading. We're going to hear from your opponents here. If it is alleged, you don't dispute that the duty to defend is triggered. If there's some portion of this that's covered, you've got to defend the whole suit, correct? I agree that that's the scope of the duty to defend, but I disagree with the premise that there's something that's potentially covered that's alleged. All right. So we'll hear, but your colleagues and others that are on notice, we'd like to hear from them if they disagree with your characterization that none of this has to do with the failure of a window, a door, an air conditioner, or anything else. You're saying it's all, at least once you get into the expert report, if that's incorporated by reference. And the complaint. And the complaint. Complaint plus expert report. You're saying all of this is just workmanship. When you look at the negligence count, for instance, in the complaint. In which complaint? We'll use the Milo First Amendment complaint as an example. When you get to the negligence count of that complaint, which is on page A150, although they incorporate other things, what they complain about is a duty of care to ensure that the construction of the home was completed in such a way that conformed to applicable building codes and the architectural drawings. They breached that duty in the manner in which they constructed the home. This is a standard construction defect case where they're complaining about damage to the home. Indelex is a products liability case that happened to be involved in the residential building context, but the insured there was the manufacturer. It's no different than any other product liability case where you have a manufacturer. But what about page 148 where they say free from construction defects and faulty materials? That's dealing with the implied warranty claim, which isn't covered. And, again, with the faulty materials. They're not alleging that there was an active malfunction. When you look at the expert reports and you look at the other places here, they're complaining about the exterior of the building and the water-resistant barriers and the way it was installed and the way it was designed. They're not talking about an active malfunction. An active malfunction, Your Honor, is something like, and it happens a couple times a year in the city, you have one of the high-rise buildings that has windows. And sometimes on certain days they pop out and they come crashing to the ground. That could be an active malfunction. And if that window were to strike a car or a bus, that would be property damage to something other than the builder's building, the builder's own work. Or, God forbid, it struck a person. That would be bodily injury. That's not what this case is about. They're not talking about a window popping off of the house, hitting somebody walking into the house, or even hitting the children or family members playing in the house. They're talking about a window that fails, that allows leaking. And also, what do they describe the leaking as? It's ongoing. It's pervasive. It's been happening since immediately after the settlement. It's not a sudden boom event. But let's say, so we'll hear from your point. Maybe they can cite us some specific pages where they say there is a window, and we put it in right, and the window, it was just badly made. From the manufacturer, it was bad. The interior seal of the window was bad. Water came in. Do you have a basis for resisting a duty to defend based on that? Yes. I still think Coverner and the cases after it discuss the fact that if there is not damage to something other than the insured's work, there's no coverage. That's what each of those cases repeatedly say. None of those cases involve that. None of those cases help that. They don't involve that. Well, they don't have to address it because in each of those cases, they involve damage to what the insured constructed. In Coverner, it's the coke oven. In Gambone, in fact, I even believe there were some allegations of use of faulty materials there. But it's problems with the house itself, the windows, the doors, the stucco. Is there other property argument? Yes. Every one of the cases that has discussed this in the building context says that if there's faulty workmanship or something that only causes damage to the work and product of the insured, the overall house, there's no coverage. And it's based upon the fortuity. Your adversary points out that you went in pretty hard and said the district judge blew it by not considering this. But I don't think you raised it before the district court, did you? We did, Your Honor. In fact, we raised it in both of our motions. I'll cite Milo for an example. But it's the same paragraph in the motion in Clare. Our motion for judgment on the pleadings starts at page A209 in the record. And in paragraph 7, which is on A210, we argued, consequently the underlying action alleging only claims arising out of the insured's alleged faulty workmanship and seeking damages only to repair or replace that work in the home they constructed does not seek damages caused by an occurrence. And we argued that both of those elements are required. That's what each of the statements say. That's the other property argument? Yes, seeking damage only to repair or replace the work that they did. We also raised it again in the briefing. There's a reference in footnote 7. Again, I'll cite the Milo brief on the motion for summary judgment. There's a citation there on page A224 in footnote 7 citing the L.B. Smith case. And the quote that we have says, Pennsylvania law does not recognize. May I finish this? Yeah, go ahead. Sure. Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims. The purpose and intent of a general liability policy is to protect the insured from liability for essentially accidental injury to the person or property of another. And, again, there's not property of another. This is all the insured's work and product. For you to find coverage in this case, you'll be overturning decades of law in Pennsylvania. These types of claims are routine. I'm talking about whether you preserve this issue or not. I'd be interested to hear from your adversaries as to whether they think that is sufficiently preserved. But, okay. We'll hear from you on rebuttal. Thank you. You're welcome. Thank you. Good morning, Your Honor. Your Honors, I'm just here on the jurisdiction issue. Okay. But you represent Milo, but you're talking about jurisdiction for both. For both. All right. And you file, so it's your colleague who filed the jurisdictional thing this morning. We're not ready to talk about that. We're going to have to have supplemental submissions on that. Right. Right. And I'm just here to talk about the counterstatement of the jurisdiction that I put in my brief, as well as was reflected in Mr. Cass' brief, as well. There's, you know, at the outset, there's not appellate jurisdiction here. We don't have a final order, and we don't have an order involving injunctive relief. The Levalor case... Isn't it really, I mean, it may not say injunction, but doesn't it compel action? Well, so the Levalor case, I think, is the case that guides this. And in that case, you had an order that was nearly identical. It said it defined, in that case, that order, the responsibilities of the insurer to defend. And it cites that. And the case, the opinion there says, thus the district court, while effectively defining the insurer's duty, did not order it to undertake the defense. By defining what the insurer is supposed to do, does not require the insurer to do it. And the order itself doesn't allow it to be enforced by contempt or anything of that matter. In fact, if you look at the Levalor case, even there, where the plaintiff cross-moved for summary judgment and had that cross-motion granted on the issue of whether or not the insurer had a duty, the Third Circuit in Levalor said even that isn't enough to require, to read it as injunctive relief. Okay, but we have the Romaro decision from last year, you know, that functional test, this adjudicates some of the relief sought,  if it could be enforced, pendente lida by contempt, do you argue that any of those factors is not satisfied here? Well, just like in the Levalor case, there's nothing in this order that says that it could be enforced by contempt. You don't think they did? You think an order has to say it can be enforced? I've never seen an order that says it can be enforced by contempt. I think an injunctive order has to order something to be done. In this case, it defined the scope of the duties, but it did not say that, it did not order Nautilus to continue to provide that defense. And so some of the cases that were cited in defendant's brief on the issue of injunctive relief in an order like this were like the Gone case from the Ninth Circuit. Yes, the judge writes, accordingly Nautilus has a duty to defend in the underlying suits until it is clear there's no longer a possibility of product-related tort. Insure must defend its insurer. That's not enough? No, that's not enough, Your Honor. Well, according to Levalor, that's not enough. And in some of the other cases that were cited by the defendant in their brief, like the Gone case. The judge would have to include language, and if they don't do this, you could be held contempt. Or language like in the Gone case where they said that you have to pay the defense fees as they're incurred. Something that shows that this is above and beyond simply a definition of what you're supposed to do. So you don't think a declaratory remedy can ever be enforced by contempt? I mean, the declaration is ordinarily how we handle decisions of insurers, decisions of property rights, family rights. You don't think there can ever be contempt? I'm not aware of authority that suggests that. And I don't think I'm saying that declaratory relief can never be enforced by contempt. But I'm saying when you have a case that, again, is almost identical to this Levalor case. Well, but I mean, look, the 11th Circuit in National Union Fire, the 9th Circuit in Gone. We in Ramara have all found actions like this to be appealable because it's under 1292A1. Yeah, it's not a final judgment, but this is one of the exceptions for interlocutory review. Right. And like, as I noted in the Gone case and the Union Fire case that you both mentioned, both of them have an ongoing duty, an ongoing requirement that the insurer do something, right, pay defense costs as they're incurred, things of that nature. That's not what Judge Shirk said here. He simply defined what the duty was. And just like in the Levalor case, that definition of a duty is not injunctive in and of itself. All right. Thank you, Carol. Thank you. Thank you. Counselor, can you represent the Clare plaintiffs? So I represent, well, good morning, Your Honor. May it please the court. Jonathan Cass. I represent 200 Christian Street Partners LLC, Virgil Procaccino, and Arthur Elwood, who are the insureds under the Nautilus policies. Did you file this motion to dismiss yesterday? I did file it, Your Honor. Based on events that happened two months ago? Your Honor. You waited until the eve of argument. Could you please explain why? Candidly, I didn't think of the idea until I started preparing for oral argument. And it wasn't my intention to sandbag the court or to sandbag counsel. It's one of those things when I began preparing, I realized, yes, we have a second amended complaint that's been filed in the Clare matter. And the carrier had just issued a reservation of rights letter in that case. And I thought it was ripe and should be brought to the attention of the court because no one else had done so. Okay. Why don't you move into the substance of your argument? All right. Thank you. So I want to, because the Caberner and Gambone case have been relied upon by counsel in terms of this faulty workmanship, I wanted to kind of go back a little bit in time and briefly talk about the jurisprudence prior to that, how insurance coverage was handled in these types of cases, and then what's happened since that. And then I'm going to relate why that's relevant to this particular appeal. So prior to the Pennsylvania Supreme Court's decision in Caberner, if the contractor, after completing a project, was sued by the property owner for negligence, which included allegations of property damage to the building itself, the general contractor's commercial general liability policy would determine that an occurrence had been alleged. Because to get inside a policy, you need an occurrence. That's the door to open to the policy. If there was negligence, an allegation of property damage, the door was open pre-Caberner. Once the door was open, the court would then compare the allegations in the complaint to the terms and conditions of the policy to determine whether coverage actually had been triggered. If any of the numerous exclusions that are contained in a general liability policy, such as the your work exclusion or the your product exclusion or the impairment of property exclusion, applied to that particular allegations in the complaint, so as to defeat coverage, the carrier would deny coverage. If the carrier determined that the factual allegations in the complaint either did or just might come within the coverage provided by that policy, coverage was triggered, the carrier assigned defense counsel, and the case would be fended under a reservation of rights in which the carrier reserved any coverage defenses that it had. So that was the way things used to be. And then in 2006, the decision in Caberner came out. And subsequent to Caberner, Gambone. And that dramatically changed how carriers approach such negligence claims brought by a property owner when there are allegations of faulty workmanship. And I would note that the jurisprudence in Pennsylvania on faulty workmanship not being an occurrence is somewhat unique to Pennsylvania. There's only several jurisdictions in the country that follow it. All the other jurisdictions do not, including, Your Honor, New Jersey, Delaware, Maryland, Virginia, everyone around us. I couldn't help but read on page 19, footnote 1 in your brief, I guess you're not a fairly converted case. And you said it actually misinterpreted occurrence. And then you suggested that we look to Tenth Circuit law. But isn't our charge trying to predict what the Supreme Court of Pennsylvania would do? It is, Your Honor. And I've been fighting against this line of cases for well over, what, 13 years now. I'm a construction litigator. I deal with coverage issues. And I see this over and over again. But we're not the ones to overturn it, I don't think. Well, no, Your Honor, that was just my way of expressing my frustration over the last 13 years. No, I'm not suggesting that the court can sui sponte a not follow Coverner. But the argument here, and I think as the panel has indicated, this is not a Coverner-Gambone situation. This is an intellect situation, and I'm getting there. So the Coverner and Gambone had the effect of creating somewhat confusing jurisprudence, I'm going to say, with regard to the coverage available to contractors and developers under a CGL policy. As Pennsylvania courts, since those decisions, have grappled with applying the rationale of Coverner and the holdings of both those cases. And as part of this jurisprudence, Pennsylvania courts, specifically in Indelex recently, there was a 2014 case, has developed the concept, the active malfunction of a product, which is the basis for Judge Surik's decision in this appeal. So I want to talk just briefly about Coverner. In Coverner, the Pennsylvania court decided, Supreme Court decided, that it needed to interpret the meaning of an accident as used in the definition of an occurrence. That's set forth in the CGL policy under which Coverner was insured. And remember, as I said, occurrence is the door to get into the policy. Accident is part of the definition of occurrence. So the court said, we need to understand what an accident is. It determined that the critical component of an accident is that it is unexpected. And the court concluded that unexpected implies a degree of fortuity. Those are the magic language. The degree of fortuity that is not present in a claim based upon faulty workmanship. All right. Let's talk about the materials. The first thing, Ms. Scioscia argued rather forcefully, that you haven't in fact pled the failure of any materials, windows, doors, AC units. Can you cite any specific places in the record or complaint, et cetera, where you have in fact pled that or respond to his charge that the expert report taken together with the complaint establishes that this is really all workmanship, failure to install or construction sealing of windows and doors properly? Because I think that is a central issue, at least in my mind, and I'd like to hear a specific response based on the pleadings. Sure. Now, remember, Your Honor, we're the insured, so we're the ones getting sued, so we didn't draft the complaint. So we're reliant on looking at what the complaint says and what was drafted by counsel. And I would add that the current complaint we're looking at, at least in the CLAIR matter, is not the operative complaint because the second amended complaint was filed. Now, in his opinion, Judge Surik looked at several different points. Second. Yes. Sorry. Please don't move it. Okay. Please stand in front of it. Thank you. We need to have this recorded, so thank you. So really what Judge Surik focused on is the allegation in both complaints that refers to, it's in one, looking in Milo, which is 149 and 148, A148, 149, and there's pretty identical allegations in the CLAIR case. They raised allegations that the house was not free from faulty materials. That's in paragraph 190. And then in 192, the home was not free from construction defects, which is faulty workmanship, and faulty materials. Now, for the purposes of determining whether coverage has been triggered under the policy, you look at the factual allegations. There is a factual allegation of faulty materials. I see the conclusory statement to that effect. That's not enough for Twombly and Iqbal. What specific, you know, surviving that plausibility threshold pleading is there, that it was actually a faulty material? I think that's the thrust of what your friend on the other side is saying, that, yeah, you use the label workmanship material, but it's really workmanship. Where's it pled properly? Well, I mean, I disagree with Your Honor respectfully in that the complaint specifically is creating a distinction between faulty construction and construction defects, which is going to be installation issues, and faulty materials. Okay, I see those words in paragraph 193, but where is there an allegation that would survive Twombly and Iqbal of how it actually was, you know, the window opened up and the rainstorm came in through the bad seals or something? There's some discussions. Let me just see here. 75 and 77. Paragraph or page? There's an allegation in 75 and 76 concerning a problem with the window and that the sash needed to be replaced. A sash is a part of the window, and there's an allegation that there's a problem with the window sash and that it needs to be replaced. Look, I don't disagree that it's not crystal clearly pled in either of these complaints, but as Judge Surik concluded, there's sufficient factual allegations in these complaints to suggest that plaintiffs are pursuing an active product malfunction theory and that this is a products-based liability case. And all the court has done is said, based upon these allegations, you have a duty to defend. And we will determine later on in this case whether there are sufficient facts during discovery that would substantiate there being a duty to indict. Okay, I can see that. It's not crystal clear, but they do mention the sashes and things. So maybe that gets you water intrusion based on failure of the window. Maybe it doesn't. I think your adversaries are on even stronger ground talking about the bodily injury component here. There's not a party here who suffered bodily injury at all. There's some fear of future risks, which they argue is not covered, and there's very vague references to some child non-party's respiratory issues. Is that really pled properly here? Well, your Honor, I think the folk, I hear what counsel said, but I think there's something else missing that's more important. That's the allegation that there needs to be something other than damage to the work itself of the contractor in order to trigger the active malfunction theory. And this is important. The whole idea of faulty workmanship is that it doesn't have the degree of fortuity required to be an occurrence. Got it. What the court did in Indolex, relying on Kverner. Kverner, when it was talking about something unexpected in the context of an accident, it said such as an active malfunction of a product. You're defending on the failure of the product, but you don't have a substantive response to the bodily injury. Well, can I just, I'll address that, but I think there's something more important about that. I think that Judge Sirk threw in the bodily injury, and I agree that it's not crystal clear just like some of the other allegations pled, but the real point here is that once you have an active malfunction that's alleged factually, you then have an occurrence, right? Because the court has already said, well, and that has the degree of, that's unexpected. You can't expect a contractor if there's a problem with the window or a problem with the moisture barrier that fails and causes a problem. That's unexpected. And once you have that unexpected, you have an accident and thus an occurrence. And once you have an occurrence, you get inside the policy. And when you get inside the policy, you have the exception to the your work exclusion. And your work exclusion says, hey, completed operations, when you're done, we're not going to provide coverage for allegations of property damage to your work. If there's a problem with your work, that's your problem. However, general contractor, if that allegation of faulty workmanship relates to the faulty workmanship of your contractor, of your subcontractor that creates problems in somebody else's work, another subcontractor's work, you have coverage for that. So the distinction that counsel's making here in the problem with the argument is that he's saying faulty workmanship. This is what we have. If you have faulty workmanship, you have to have property damage. You can't just have property damage to the product or the work itself. We're not talking about property, I'm sorry, faulty workmanship. We're talking about active malfunction, which allows us into the policy and grants that traditional coverage that's always been there for a general contractor. Well, if we disagree, you noted in footnote two that this other property, a concept that your adversary brought up was not properly preserved. Is that, you heard how he responded. That actually wasn't in my brief. We did not, I don't believe we challenged that there was, that it was preserved or not. You said we should ignore it because it wasn't raised in the briefing below. The other brief. Oh, OK. Sorry. That's true. OK. All right. Thank you, counsel. Thank you. Before you get into your points, I'm kind of curious. Am I correct? This appeal is not about the exclusions at all. This is all about coverage and occurrences. I did not see the, you're having appeal on exclusions. We did mention the fungi and mold exclusion to the extent that the district court sua sponte, because it wasn't in any briefing, arguing that there was a bodily injury claim that created coverage. We didn't address it. They didn't raise it in their briefing. It didn't come up until the district court's order. So we've noted in the appellate briefing. But you have not preserved that in the district court. OK. I'm sorry? Yeah, that was not the threat. That was not your argument in the district court. It's not. No, it was one of the counts in our complaint that when the court erroneously found a duty to defend and therefore didn't consider the remaining counts, one of those counts argued that there was no coverage because of the mold exclusion to the extent there is any bodily injury here. And I don't think there is an allegation of a plaintiff that has standing to for bodily injury that actually occurred during the policy period, even if there was. Got it. The mold exclusion clearly negates any of the bodily injury. I'd like to respond to a couple points. Mr. Cass at one point just said that once you have an active malfunction, you have an occurrence. He didn't cite a case for that. And that's certainly not what Intellect says.  insured's product. And I think there was some question about the other than language during my initial presentation. But in the Hagel v. Falcone, yes, it's an unpublished case, but it's the Pennsylvania Superior Court after Intellect's. And what Hagel said is that the most critical element in Intellect's was the plaintiff's claims were product liability tort claims that were, quote, this is Hagel quoting Intellect's, based on damages to persons or property other than the insured's product. I mean, there really is no dispute that the case law coming out of the Pennsylvania State Courts, the Superior Court, is that there has to be damage to something else. So, first of all, I don't believe this case alleged an active malfunction. And Your Honor asked to point to places with that. I don't believe any of the places pointed to involve an active malfunction. But even if there is an active malfunction, and even if this case is deemed as being governed by Intellect's, you still need damage to something other than the insured's product. The reason Intellect's doesn't apply is because it was an entirely different fact pattern. It was the manufacturer of a component part that then gets put into a house. It could have been a component part put into a car. It could have been a component part put into a toy. It just happened to be in a house. Should we be applying contra preferentum here? No, because you have to get through the occurrence issue. And I think what you're saying is because of some exclusion, we have to think that there maybe is coverage in the first instance. The Pennsylvania Supreme Court in Converner was very clear that occurrence means accident. The definition of accident when defined and used in a policy like this, you look to the ordinary dictionary definitions, and it's something that's unexpected. Making something, using bad products, making things where you didn't follow plans and specifications, that's not an accident. In Converner, they emphasize Professor Henderson's treatise of 1971 or so, that there are other areas of recourse for those sorts of things, like a performance bond. Even going back in time, because he's arguing in the footnote that there shouldn't be a fortuity requirement, back in 1752, when Ben Franklin started the first fire insurance company here, it was to allow the citizens of Philadelphia to get protection from fortuitous events. Lightning strikes were fires that weren't their own cause. That's the situation here. If somebody builds something and they intend to do it, and they do what they want to do, and they do a crappy job, that is not what a CGL policy does. Otherwise, all of us will go out and purchase policies, build houses, ask for a couple million dollars, and then turn around and hand the bill to our insurance companies to fix it. If you find coverage here and you don't reverse, you're changing decades of law in Pennsylvania. You're giving plaintiffs bar and easing out in every construction case to just include a couple words about faulty materials, and every one of those cases then would have to be defended to the extent that this court's abiding in the state courts. And also, you're now requiring insurance companies to do what? We have to now intervene in cases and seek allocation of damages between covered and uncovered. We possibly have to get involved in discovery, because the insurers have no incentive to show this isn't really a bodily injury case, or this really isn't an act of malfunction. So you're going to open up a whole can of worms here, and there's no need to. Both the precedent of this court, the Pennsylvania Supreme Court, and the recent decisions of the Pennsylvania Superior Court after Indelex, all require that this court find that there's no coverage for this and no duty to defend. Thank you, counsel. We'll take the case under advisement. Thank counsel for their excellent briefing and oral argument in this challenging case.